UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL DOWNING,

                     Plaintiff,                          Case No. 1:06-cv-232

v.                                                            Honorable Robert J. Jonker

CORRECTIONAL MEDICAL
SERVICES, INC. et al.,

                     Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On June 14, 2007, this Court ordered service of Plaintiff's complaint on Defendants. The matter presently is before the Court on three separate motions for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies: (1) a motion for summary judgment by Defendants (Unknown) Jenkins, (Unknown) Coleman, (Unknown) Gelabert, Kent D. Filsinger and Correctional Medical Services, Inc. (the CMS Defendants) (docket #65); (2) a motion for summary judgment by Defendants Nanette Norwood, Lou Ann Dick, Walter Ormes, (Unknown) Barrett, Patricia L. Caruso, Carol Howes, (Unknown) Klee, (Unknown) Hawkins, Julie Van Setters, M.A. Schorfhaar, (Unknown) Cline, Richard B. Stapleton, (Unknown) Dekeyser, Lori Gidley, George Pramstaller, Terri Halfman, and Karmen M. Blount  (the State Defendants) (docket #74); and (3) a motion for summary judgment by Defendant William Borgerding (docket #80).  Upon review, I recommend that the motions for summary judgment filed by the CMS Defendants and the

State Defendants be granted in part and denied in part.  I further recommend that Dr. William

Borgerding's motion for summary judgment be granted.[1]

## **Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine

issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union

of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must

consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable

inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th

Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense

that the Defendant has the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007).

A moving party without the burden of proof need show only that the opponent cannot sustain his

burden at trial.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see

also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  A moving party with the burden of

---

[1]Like the State Defendants, Dr. Borgerding is represented by the Michigan Attorney General's Office, and his motion and brief simply adopt and incorporate the arguments of the State Defendants.  As a consequence, for purposes of discussing Defendants' arguments, I will hereafter include Defendant Borgerding as one of the State Defendants.

proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff presently is incarcerated with the Michigan Department of Corrections and housed at the Parnall Correctional Facility, but he complains of events that occurred at the Mid-Michigan Correctional Facility (STF), the Florence Crane Correctional Facility (ACF), and the Boyer Road Correctional Facility (OTF). In his *pro se* complaint, he sues Correctional Medical Services, Inc., Michigan Department of Corrections (MDOC) Director Patricia Caruso, MDOC Medical Director George Pramstaller, STF Doctor (Unknown) Jenkins, STF Doctor (Unknown) Coleman, ACF Doctor (Unknown) Gelabert, Riverside Correctional Facility (RCF) Doctor William Borgerding, RCF Doctor Lou Ann Dick, RCF Doctor Walter Ormes, ACF Doctor (Unknown)

Barrett, STF Deputy Warden Nannette Norwood, ACF Warden Carol Howes, ACF Deputy Warden (Unknown) Klee, ACF Assistant Deputy Warden (Unknown) Hawkins, RCF Julie Van Setters, ACF Nurse Mary Ann Schorphaar, ACF Health Care Records Department employee T. Cline, MDOC Hearings Administrator Richard Stapleton, ACF Sergeant (Unknown) Dekeyser, Carson City Correctional Facility (DRF) Deputy Warden Lori Gidley, DRF Librarian Terri Halfman, DRF Physicians Assistant Kent Filsinger, and DRF Health Unit Manager Karmen Blount.[2]

Plaintiff raises a variety of claims against Defendants based on alleged federal constitutional and state law violations from 2003 to 2006: (a) certain Defendants were deliberately indifferent to Plaintiff's serious medical needs by inadequately diagnosing and treating his hernia, neck and back pain, dental problems (cavities), depression, ear pain, and vision impairments; (b) certain Defendants were deliberately indifferent to Plaintiff's serious medical needs by failing to make alternate arrangements for his physical therapy because transportation to appointments aggravated his back pain; (c) numerous Defendants were deliberately indifferent to Plaintiff's serious medical needs by failing to employ sufficient dentists at the Florence Crane and Carson City Correctional Facilities; (d) certain Defendants violated Plaintiff's due process rights under the Fourteenth Amendment by finding Plaintiff guilty of an unreasonable major misconduct, which impacted his parole; and (e) Defendants Halfman and Gidley violated Plaintiff's right to access the courts under the First Amendment by refusing him law library access and copies of exhibits for this complaint.  Plaintiff also asserts several state-law claims, including negligence, gross negligence, fraud, blackmail, and pain and suffering.

---

[2]Plaintiff sued five additional Defendants for whom service was returned by the United States Marshal as unexecuted and for whom no attorney has filed an appearance: STF Doctor (Unknown) Jacobs (docket #97), RCF Jacklyn Jackson (docket #48), ACF Nursing Supervisor C. Parker (docket #43), ACF Hearings Officer I. Rairigh (docket #44), and Acting Chief Medical Officer Doctor Marcella Clark (docket #42).  Plaintiff has made no further attempts to renew the summonses or to otherwise attempt to serve the complaint on these Defendants.  I therefore recommend that these five Defendants be dismissed without prejudice for failure to execute service of process.  See FRCP 4(m).

**Discussion**

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.

I.        Applicable Law

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint. *See Freeman*, 196 F.3d at 645. Further, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis added). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford*, 548 U.S. at 90-91. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 548 U.S. at 88. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner

- 5 -

has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford*, 548 U.S. at 93. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

II.  MDOC Policy Directives

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[3] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response or does not receive a timely response he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III

---

[3]The MDOC amended Policy Directive 03.02.130 on July 9, 2007.  However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

grievances on behalf of the MDOC director. *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and  staff at all steps of the grievance process.   *Id.* at ¶ U.   "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶S.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

III.    Grievances

In support of their respective motions, the CMS Defendants and the State Defendants have attached both a list and copies of 29 grievances filed by Plaintiff over the period in issue. Defendants make a variety of arguments concerning the adequacy of each grievance to demonstrate exhaustion.  The Court will address each grievance separately.

### A.    Grievance No. STF 2003-07-361-12D1

In his grievance, Plaintiff complained that between May 12, 2003 and the date of his grievance, July 17, 2003, his upper back problem was causing extreme pain in his back and left arm. He claimed that he was receiving inadequate care and, specifically, had been denied a referral to a neurologist and an MRI.  Both the CMS Defendants and the State Defendants contend that Plaintiff failed to properly exhaust Grievance No. STF 2003-07-00361-12D1 because Plaintiff filed his grievance to Step I more than five business days after the incident he grieved, in violation of PD 03.02.130, ¶ W.  They also argue that he failed to name in his grievance the individuals responsible for the conduct of which he complains as required by MDOC Policy Directive 03.02.130, ¶ T.

Defendants' arguments are without merit. First, Plaintiff did name the Defendants. In the attachment to his Step II grievance, he stated that his grievance was directed towards the STF medical staff, CMS Medical Director Dr. Hutchinson (who is not a Defendant in this action), and MDOC Medical Director Dr. Pramstaller. Nothing in the grievance policy requires that all individuals be named in the Step I grievance. The policy directive requires that the grievant use certain forms to file a Step I, II or III grievance. The policy directive also provides that certain information be included in a grievance, i.e. the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how), but does not specifically state that the information must be in a Step I grievance. *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T (emphasis in original). The Sixth Circuit previously required a prisoner to specifically mention the involved parties in the Step I grievance. *See Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003). This is no longer the case. The Supreme Court in *Jones*, 127 S. Ct. at 922, abrogated the Sixth Circuit's rule in *Burton,* and held that inmates were required only to follow the prison's requirements for exhaustion.

Second, Plaintiff's grievance was addressed on the merits at all three steps of the grievance process. As previously discussed, a claim is only procedurally defaulted if the decisionmaker actually relied upon an adequate and independent procedural rule in reaching its decision. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts). Even if Plaintiff did not follow the grievance policy precisely, prison officials did not rely on the default by rejecting the grievance for failure to comply. When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical

procedural rules. *See Woodford,* 548 U.S. at 90 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly").

As a consequence, Grievance No. STF 2003-07-00361-12D1 serves to exhaust Plaintiff's administrative remedies with respect to the matters raised in the grievance as to all STF medical staff and Defendant Pramstaller.

### B.     Grievance No. ACF 2004-08-529-12A2

The CMS Defendants contend that the Grievance No. ACF 2004-08-529-12A2 was not timely filed and that the CMS Defendants were not responsible for the subject of the grievance, dental treatment. The State Defendants contend that the grievance was not timely. They also contend that the grievance does not serve to exhaust claims against Dr. Ormes, as he was the Step II respondent and cannot be held liable for performing that role.

Plaintiff's grievance was not rejected at any step as untimely. As previously discussed, a claim is only procedurally defaulted if the decisionmaker actually relied upon an adequate and independent procedural rule in reaching its decision. *See Maupin*, 785 F.2d at 138. Because the decisionmaker at all three steps of the grievance process addressed Plaintiff's grievance on the merits, the grievance is considered properly filed and exhausts Plaintiff's claims that he was denied dental care in 2003 and 2004. Moreover, inasmuch as Plaintiff's grievance did not name any individual, his grievance serves to exhaust his claims against all Defendants involved in his dental care. The argument of the State Defendants that Dr. Ormes cannot be held liable for conduct taken as a grievance reviewer is not relevant to this exhaustion motion. To the extent that Ormes had any actual involvement in Plaintiff's dental care, Plaintiff's claim is exhausted as to Ormes. Similarly, if any CMS Defendant was involved in Plaintiff's dental care, the grievance serves to exhaust the

claim against him.  The determination as to whether any Defendant was involved goes to the merits not to whether the claim was administratively exhausted.

### C.    Grievance No. ACF 2004-08-699-12E1

Grievance No. ACF 2004-08-0699-12E1 states that Plaintiff repeatedly sought medical treatment for severe back pain without success.  The grievance alleges that, when Plaintiff refused transportation to physical therapy because he could not stand the pain of riding in the vehicle, doctors would not give him further treatment.  The CMS Defendants contend that Plaintiff failed to properly exhaust his administrative remedies in this grievance because he failed to comply with the policy requiring that he name those responsible for the issue grieved.  They also claim that the grievance does not specify the alleged wrongdoing and that Plaintiff admittedly refused the physical therapy offered to him.  The State Defendants argue that Plaintiff failed to name responsible parties and they contend that the grievance reviewers cannot be held responsible on the basis of their review.

Defendants' arguments are without merit.  In his Step II grievance, Plaintiff stated that he held responsible for his lack of treatment Defendant MDOC Director Patricia Caruso, Warden Carol Howes, and all MDOC Bureau of Health Care personnel "throughout and down to the institutional level for those who have been treating me over the last 20 months."  Moreover, the grievance was addressed at all three steps on the merits.  The decisionmakers did not rely on the alleged deficiency of the grievance in not naming responsible parties.  As a consequence, the grievance exhausts all claims raised in the grievance against all Defendants involved in the alleged denial of treatment, including all medical personnel at ACF (Defendants Gelabert, Barrett and Schorfhaar).

### D.    Grievance No. ACF 2005-02-125-28I

Grievance No. ACF 2005-02-0125-12E1 claimed that Dr. Gelabert deliberately refused to see Plaintiff when he appeared for his appointment on January 28, 2005, ostensibly because Gelabert was tired of dealing with Plaintiff's health care issues.  Both the CMS Defendants and the State Defendants argue that the grievance does not serve to exhaust any of Plaintiff's claims because Plaintiff failed to first attempt to resolve his issue with staff prior to filing the grievance, in violation of MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ G(3).  They also argue that the grievance is vague, in violation of ¶ G(1) of the policy.

Plaintiff's grievance initially was rejected at Step I because Plaintiff failed to discuss the issue with Dr. Gelabert before filing his grievance.  However, as the Step III reviewer noted, the grievance subsequently was processed at Step I and was addressed on the merits at both Step II and Step III.  Because the last decisionmaker addressed the issue on the merits, the grievance is properly exhausted against Dr. Gelabert.  Plaintiff therefore has exhausted his claim that Dr. Gelabert deliberately refused to see him for his appointment on January 28, 2005.

### E.    Grievance No. ACF 2005-03-325-18B

Grievance No. ACF 2005-03-0325-18B alleges that on March 25, 2005 Defendant Dekeyser refused to allow Plaintiff to leave the library to go to his cell or to health services, despite the fact that Plaintiff was in substantial pain.  Defendants do not dispute that the grievance was addressed through Step III on the merits.  They argue only the obvious fact that the grievance exhausts a claim solely as against Defendant Dekeyser.  As previously discussed, when a plaintiff fails to name any individual in his grievance, the MDOC is immediately on notice of the plaintiff's failure to provide the names of those who were involved and should reject a plaintiff's grievance in Steps I, II and III responses under MDOC Policy Directive 03.02.130, ¶ T for the plaintiff's failure

to name any defendants in his or her grievance.  If the MDOC does not reject the grievance for failure to name names, the grievance is considered properly exhausted as to all Defendants subsequently shown to have been involved.  On the other hand, where, as here, a plaintiff names at least some individuals in the grievance, the MDOC would have no reason to know that a plaintiff would be suing different individuals until the plaintiff filed his complaint.  In that scenario, a defendant's first opportunity to raise the procedural rule is in a motion for summary judgment. Raising the procedural bar at that juncture therefore is adequate to invoke the procedural default. The grievance therefore exhausts the claim against Defendant Dekeyser only.

### F.       Direct Grievance No. 163561-28C

As Defendants assert, Direct Grievance No. 163561 was rejected because it contained multiple issues.  Because the decisionmaker enforced the default by rejecting the grievance for a failure to comply with policy, the grievance did not properly exhaust any claim.

### G.       Direct Grievance No. 164438-12D1

Plaintiff submitted Grievance No. 164438-12D1 directly to Step III, but it was rejected and returned to Step I for further processing.  Because the grievance was not addressed at Step III, it did not serve to exhaust any claim.

### H.       Direct Grievance No. 181987-14F

Plaintiff submitted Grievance No. OTF 2005-0-14F directly to Step III.   The grievance was rejected and returned to Step I.  Because the grievance was not addressed at Step III, it did not serve to exhaust any claim.

### I.       Grievance No. OTF 2006-03-149-12G

Plaintiff complained in Grievance No. OTF 2006-03-149-12G that he needed bifocals and had been placed on the waiting list for the optometrist.  He claimed that, due to pressing

litigation needs, his optometric issue was urgent. Defendants first argue that the grievance was untimely because it was filed more than five business days after the incident in question. However, the grievance was exhausted through Step III on the merits and was not rejected as untimely. As a result, Defendants' claim that the grievance was untimely is meritless.

Defendants next argue that the grievance does not name any individual who is a Defendant in this action. Plaintiff named in the grievance only Virginia Beardslee, who is not a defendant in the action. Because Plaintiff named only Virginia Beardslee in his grievance, the grievance fails to exhaust Plaintiff's claim against any Defendant.

### J. Grievance No. OTF 2006-02-0075-12I

Defendants assert that Grievance No. OTF 2006-02-0075-12I was untimely and contained multiple issues. The grievance was rejected at all three steps for both reasons. As a consequence, the grievance failed to exhaust any issue as to any Defendant.

### K. Grievance No. OTF 2006-05-304-18A

In Grievance No. OTF 2006-05-304-18A, Plaintiff alleged that Inspector McMillian improperly sent him to punitive segregation for asserting his medical needs and that McMillian was deliberately indifferent to those needs. The grievance was exhausted through Step III, but it named only Inspector McMillian, who is not a Defendant in this action. As a consequence, the grievance fails to exhaust any claim against any Defendant.

### L. Grievance No. OTF 2006-04-252-12E1

In Grievance No. OTF 2006-04-252-12E1, Plaintiff makes lengthy complaints about inadequate medical treatment after his hernia surgery on April 5, 2006, including denial of pain medication and ice and a refusal to permit him to go to health services. He claims that he also was issued two misconduct tickets, which were ultimately dropped, and was placed in punitive

segregation for attempting to get medical care in the face of the denial.  Plaintiff also complained that he was not treated for his migraine attacks during this period.  In his grievance, Plaintiff named Inspector McMillian, PA Filsinger, RN Supervisor Mary Barnell, RN Karmen Blount, and Jill-Keller-Jerome.  Both Filsinger and Blount are Defendants in this action.

Defendants argue that the grievance was untimely.  However, the grievance was addressed on the merits at all three steps of the grievance process, so the grievance must be considered properly exhausted.  As a consequence, Plaintiff's claims against Defendants Filsinger and Blount for failing to treat his post-surgical pain and migraines are exhausted.

### M.      Grievance No. OTF 2006-06-377-14A

The State Defendants concede that Grievance No. OTF 2006-06-377-14A exhausted a claim by Plaintiff against Defendant Librarian Halfman for failing to provide him extra law library time and thereby denying him access to the courts.  Defendants correctly assert, however, that Plaintiff raises no claim in his complaint about being denied access to the library.  As a result, the grievance does not exhaust any claim in the complaint against Defendant Halfman or any other Defendant.

### N.      Grievance No. OTF 2006-10-661-14A

In Grievance No. OTF 2006-10-661-14A, Plaintiff claimed that Defendant Halfman denied him access to the library and failed to make copies necessary for his legal actions and that Defendant Gidley failed to respond to his requests to ensure that Halfman made copies and allowed access.  In his complaint, Plaintiff alleges that Halfman denied him access to the courts by failing or refusing to make necessary copies and that Gidley refused to respond to his kite or require Halfman to make the copies.  The grievance exhausts Plaintiff's access-to-the-courts claim against Halfman and Gidley based on the failure to make copies.

### O.    Grievance No. OTF 2006-09-616-12e3

In this grievance, Plaintiff names only Nurse Gaskill and Nurse Practitioner Marble in his claim that he is getting food stuck in his throat.  Neither Gaskill nor Marble is a Defendant in this action.  The grievance therefore fails to exhaust any claim against any Defendant in this action.

### P.    Grievance No. SMT 2006-12-1994-12Z

In Grievance No. SMT 2006-12-1994-12Z, Plaintiff alleged that he suffered long-standing and severe back and leg pain.  He sought a medical accommodation to be moved to his prior cell block, which had continuous hot water available for compresses.  He also sought a chair and a spring mattress or double mattress detail.  The grievance named no individual, but was directed to health services generally.  The grievance was not rejected for failing to comply with the rules and was addressed on the merits at all three steps of the grievance process.  The claims therefore are fully exhausted against all health care staff at SMT.  However, Plaintiff's complaint contains no allegations regarding the incidents set forth in the grievance.  As a result, the grievance fails to exhaust any claim in the complaint.

### Q.    Grievance No. SMT 2006-12-2005-12F

Plaintiff's Grievance No. SMT 2006-12-2005-12F addresses complaints about the improper treatment and recurrence of ear, nose and sinus problems.  The grievance names Nurses Marble and Havens, who are not Defendants, as well as PA Filsinger and Dr. Jenkins, who are Defendants.   The grievance was considered on the merits through Step III and exhausts Plaintiff's claims against Defendants Filsinger and Jenkins regarding the treatment of his nose, sinus and ear problems between August and December 2006.  Plaintiff's complaint, however, does not allege that he was denied treatment for his ear and sinus problems beyond February 2006.  The grievance therefore is not relevant to Plaintiff's pending claims.

**R.      Grievance No. MPF 2007-01-36-12I**

This grievance asks for a two-pillow detail at Pugsley Corrctional Facility (MPF). Plaintiff raises no claim in his complaint about conditions or individuals at MPF. The grievance is not relevant to the complaint.

**S.      Grievance No. SMT 2007-03-268-28C**

Grievance No. SMT 2007-03-268-28C involves allegations about a retaliatory transfer not raised in his complaint. It also was rejected as duplicative. The grievance therefore is both unexhausted and irrelevant.

**T.      Grievance No. ACF 2004-05-311-03D**

This grievance complains about issues and individuals who are not Defendants in this action. The grievance is irrelevant.

**U.      Direct Grievance No. 163561, 28C**

This grievance was rejected at Step III because it contains multiple issues. It therefore does not properly exhaust any claim against any Defendant.

**V.      Grievance No. ACF 2004-07-425-09A**

Grievance No. ACF 2004-07-425-09A addresses shortages in food portions, an issue not raised in the complaint. It is irrelevant.

**W.      Grievance No. ACF 2004-10-654-01A**

The grievance alleges that money was removed improperly from Plaintiff's account. The grievance is irrelevant because it names no Defendant and raises no claim set forth in the complaint.

**X.      Grievance No. ACF 2005-01-82-28J, amended 28A**

This grievance was rejected at Step III as duplicative of ACF 2005-01-27-03E. The claim therefore was not properly exhausted. The grievance also is irrelevant because it raises concerns about an air exchanger that are not raised in the complaint. The grievance is both unexhausted and irrelevant.

### Y.      Grievance No. ACF 2005-01-27-03E

The grievance involves maintenance issues and individuals who are not Defendants in the action. It therefore is irrelevant.

### Z.      Direct Grievance No. 170953, 27D

The grievance concerned a parole denial and was rejected as nongrievable. The claim also is not raised in the complaint. The grievance therefore is not relevant.

### AA.     Grievance No. ACF 2005-03-287-27B

Plaintiff grieved the removal of a treadmill from the gym, and the grievance was rejected as nongrievable. The grievance therefore is neither properly exhausted nor relevant.

### BB.     Grievance No. ACF 2005-03-313-28I

The grievance complained about changes to the prison call-out system. The issue is not raised in the complaint. The grievance therefore is irrelevant.

### CC.     Grievance No. OTF 2005-12-701-18B

In this grievance, Plaintiff complains that he was not given enough time to eat lunch. The complaint contains no allegations regarding this claim, and the grievance therefore is irrelevant.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the motions for summary judgment filed by the CMS Defendants (docket #65) and the State Defendants (docket #74) be granted in part and

denied in part.  I recommend that Defendant Borgerding's motion for summary judgment (docket #80) be granted.   Based on my recommendations with respect to the various grievances, I recommend that the following Defendants be dismissed for lack of exhaustion: William Borgerding, Lou Ann Dick, (Unknown) Klee, (Unknown) Hawkins, Julie Van Setters, (Unknown) Cline, Richard Stapleton, and Nanette Norwood.  I further recommend that the following Defendants be dismissed without prejudice for lack of service:  (Unknown) Jacobs, Jacklyn Jackson, C. Parker, I. Rairigh, and Marcella Clark.

Finally, it is recommended that Defendants' motions to dismiss for lack of prosecution (docket #114 and #116) be denied.


Dated:  November 20, 2008                           /s/ Timothy P. Greeley                          
                                                    TIMOTHY P. GREELEY
                                                    UNITED STATES MAGISTRATE JUDGE




<u>**NOTICE TO PARTIES**</u>

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).